UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **FARID ZAYED, M.D.** | **CIVIL ACTION NO. 08-692** |
| **VERSUS** | **MAGISTRATE JUDGE HANNA** |
| **CARDIOLOGY CENTER OF ACADIANA, ET AL** | **BY CONSENT OF THE PARTIES** |

*RULING*

This is a breach of contract claim arising out of an Employment Agreement, stipulated to be the contract between the parties. In an effort to simplify the matter for trial, the court ordered the parties to file cross motions for summary judgment on the issue of the interpretation of Schedule A, which governed payment of certain bonuses to plaintiff by defendant. Plaintiff filed a Motion for Summary Judgment Pursuant to Fed. R. Civ. Proc. 56 (Rec. Doc. 47) and defendants filed a Memorandum of Law Regarding Professional Contract (Rec. Doc. 46) which the Court construes as a motion for summary judgment. After review of the motions and the Employment Agreement, it became apparent that the contested provisions of the Employment Agreement, particularly the terms "professional fees" and "professional fees included under ancillary services" were ambiguous and parol evidence regarding the parties' intent would be necessary.

A evidentiary hearing was held on December 17, 2010. At the hearing, plaintiff Dr. Farid Zayed, a cardiologist and defendant Dr. Michael Ziad Dibbs, also a cardiologist, testified and the Employment Agreement was entered into evidence. The parties agreed

that Dr. Zayed's Statement of Uncontested Material Facts, which basically recited the provisions of the Employment Agreement, were accurate and they were read into the record at the hearing. The relevant provisions of the Employment Agreement read as follows:

Schedule A

1.1  Base Salary. During the term of the Agreement, Employer agrees to pay Employee as compensation for Employee services here under a base salary of $330,000 dollars per year for a working period of 235 days per year equally spread as much as possible through all 12 months of the year of employment. Those 235 days will be set form the start of employment and will be only changed on consensual agreement of Employer and Employee.

1.2  Additional Compensation. Following Employee's completion of 3 months of satisfactory employment, Employer shall pay to Employee a bonus, in addition to base salary as follows:

1.  During the duration of this Agreement and any renewals or extensions thereof, Employer shall pay to Employee a bonus equal to 36% of the "Net Collections" in excess of $520,000 per year dollars. Net Collections shall mean professional fees generated from all sources rendered by Employee (except for professional fees included under ancillary services), less discounts or any sums uncollected, and does not include monies from Ancillary Services as defined in section 1.3 of this Schedule.

* * *

3.  Following the 3 months of satisfactory employment, Employee shall be eligible to receive, in addition to base salary, a sum equal of 33% of ("Net Profit") for Ancillary Services to paid in quarterly payments. If during the duration of this contract, other cardiologist get employed by/associated with cardiology center of acadiana [sic] and get entitled to net profit for ancillary services, the ratio of net profit for Dr.

>>Dibbs to Dr. zayed [sic] will stay at 2:1.

>4.  If Employee's "net collection" of professional fees as defined in section 1.2-1 above was $50,000 to $75,000 per 90 day period, then employee will be entitled to 75% of allowable bonus for ancillary service as defined in item 1.2-3 above.  If Employee's "net collection" of professional fees as defined above section 1.2-1 above was $35,000 to $49,999 per 90 day period, then employee will be entitled to 50% of allowable bonus for ancillary service as defined in item 1.2-3.  If Employee's "net collection" of professional fees as defined in section 1.2-1 above was less than $35,000 per 90 day period, then employee will not be entitled to bonus for ancillary service as defined in item 1.2-3 above.

>1.3   "Ancillary Services" shall mean services provided to patients in Employer's office.  "Net Profit" shall mean all monies generated from professional and technical fees less cost of goods and operating expenses to include, but not limited to fees paid to other parties for the management of such Ancillary Services.[1] (Emphasis added).

As discussed at the hearing, there are two possible bonuses in the contract: a bonus based on "Net Collections" (1.2-1) in excess of $520,000 per year, and a bonus based on "Net Profit" from "Ancillary Services" (1.2-3 and 1.3).  The "Net Collections" bonus includes "professional fees generated from all sources rendered by Employee," but excludes "professional fees included under ancillary services" and "monies from Ancillary Services." (1.2-1).  The "Net Profit" bonus is based on 33% of "Net Profit" from "Ancillary Services."  (1.2-3).  While "Ancillary Services" is generally defined as "services provided to patients in Employer's office," (1.3),  "Net Profit" from same is

---

[1] "Employment Agreement," Exhibit 2 to Plaintiff's *Memorandum in Support of Motion for Summary Judgment Pursuant to Fed.R.Civ.Proc. 56* (Rec. Doc.  47).

specifically defined to include "all monies generated from professional and technical fees."

As a source of revenue to be included in the bonus calculations, "professional fees included under ancillary services" are specifically *excluded* from "Net Collections" revenue and "professional [and technical] fees" are specifically *included* in "Net Profit" revenue.

After hearing the testimony of Dr. Dibbs and Dr. Zayed, it became clear the disagreement centered around the definition of "professional fees" and which "professional fees" were "included under ancillary services" so that they were excluded from the "Net Collections" bonus calculation. Thus, the pivotal issue is the meaning of the terms "professional fees" and "professional fees included under ancillary services." An additional issue raised at the hearing was whether various expenses could be included as "cost of goods and operating expenses" in the "Net Profit" calculation for "Ancillary Services" in 1.3.

The parties agreed that "professional fees" included in the "Net Collections" bonus under 1.2.1 included revenues from fees for all services performed in any hospital, whether those services were face-to-face patient evaluations, performing surgical procedures, or reading and interpreting tests such as echocardiograms performed by the hospital. The parties also agreed that revenues from fees for face-to-face patient evaluations and EKG's performed as part of a patient consultation in the defendants'

offices were included as "professional fees" in the "Net Collections" calculation under 1.2.1.

However, the parties disagreed on the definition of "professional fees included under ancillary services," which are explicitly excluded from the "Net Collections" calculation. Dr. Dibbs favored a broader interpretation of "professional fees included under ancillary services" to include Dr. Zayed's revenues earned by reading and interpreting tests administered both in the office and out of the office, except for tests administered in a hospital. This definition would include professional fees generated from reading the results of tests administered by another physician, such as an internist, at either the internist's office or another facility. According to Dr. Dibbs' interpretation, only when Dr. Zayed read tests administered at a hospital were such professional fees excluded as "professional fees included under ancillary services" and thus included in "professional fees" under the "Net Collections" calculation of 1.2.1.

Dr. Zayed interpreted "professional fees included under ancillary services" more restrictively. Dr. Zayed agreed that revenues generated by him as a result of his interpretation of in-office medical testing, at least when he read and interpreted those tests at the office, were "professional fees included under ancillary services" and thus were not included in the "Net Collections" calculation of 1.2.1. However, Dr. Zayed contended that revenues generated by him as a result of his interpretation of in-office testing, when he read and interpreted those tests at a location other than the office, such as his home or

5

...

a coffee shop, should not be categorized as "professional fees included under ancillary services" but as "professional fees" in the "Net Collections" calculation. In addition, Dr. Zayed contended professional fees generated by him as a result of his interpretation of out-of-office medical testing, whether administered by a hospital or by an out-of-office physician, such as an internist, should not be categorized as "professional fees included under ancillary services" but as "professional fees" in the "Net Collections" calculation.

***Applicable Law***

The Fifth Circuit summarized Louisiana law, applicable in this diversity case, regarding interpretation of contracts and parol evidence in Condrey v. SunTrust Bank of Georgia, 429 F.3d 556, 563 (5th Cir. 2005) as follows:

> Louisiana law bars parol evidence to evaluate contractual intent "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences." La. Civ.Code Ann. art. 2046 (1987). Louisiana law does allow, however, for the admissibility of parol evidence when the written agreement is manifestly incomplete and is not intended to constitute the entire agreement between the parties. United Investors Life Ins. Co. v. Alexander, 662 So.2d 831, 833 (La.App. 2 Cir.1995); Edwards v. State of Louisiana Through the Dep't of Corrections, 244 So.2d 69, 72 (La.App.1 Cir.1971).
>
> . . . .
>
> Thus, when the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties. Martin Exploration Co. v. Amoco Prod. Co., 637 So.2d 1202, 1205 (La.App. 1st Cir.1994); writ denied, 644 So.2d 1048 (La.1994). Parol evidence may not be used, however, to vary, alter or add to the terms of a written contract. Edwards, 244 So.2d at 72.

*Findings of Fact and Conclusions of Law*

The undersigned finds the Employment Agreement susceptible to more than one interpretation and the terms "professional fees" and "professional fees included under ancillary services" ambiguous.  Therefore, the court accepted parol evidence in the form of testimony from Dr. Dibbs and Dr. Zayed to clarify their intentions regarding the interpretation of these terms.  After review of the Employment Agreement and consideration of their testimony, the undersigned makes the following findings:

1.  The term "professional fees" in "Net Collections" means all professional fees generated from all sources rendered by Dr. Zayed, except for "professional fees included under ancillary services."  The term "professional fees" in "Net Collections" includes, in addition to fees for face-to face consultations and surgical procedures regardless of where they are administered, professional fees generated by Dr. Zayed for reading and interpreting all tests administered outside of the offices of the Cardiology Center of Acadiana, such as in hospitals or by other physicians in that physician's offices or at other facilities, no matter where the reading and interpretation of those tests by Dr. Zayed took place.

2.  The term "professional fees included under ancillary services" includes all professional fees generated by Dr. Zayed for reading and interpreting all tests (except EKG's which remain as "professional fees" included in "Net Collections") administered in the offices of the Cardiology Center of Acadiana, no matter where the reading and

interpretation by Dr. Zayed took place.

This undersigned finds this interpretation of the terms "professional fees" and "professional fees included under ancillary services" is consistent with Dr. Dibb's explanation, at oral argument and in brief, of the profit sharing nature of the "Net Profit" from "Ancillary Services" bonus and the goal of the "Net Collections" bonus to encourage new physicians to build their own practice.

The medical testing provided by the Cardiology Center requires an investment in equipment and technical personnel, and the professional fees generated from the use of that equipment are used to offset the expenses of that investment. The expenses of the equipment and technical personnel are not imposed on any particular physician. It therefore follows that the revenues derived from use of that equipment, including professional fees, are not credited to any particular physician but pooled into the "Net Profit" from "Ancillary Services" calculation to offset the equipment expenses. Therefore, revenues derived from reading the results of in-office testing using in-office equipment is properly categorized as "professional fees included under ancillary services."

However, the defendants have made no investment nor incurred any expenses for equipment or technical personnel when a test is administered outside of their offices using another person's equipment. There are no office equipment expenses to offset, and no reason to pool the professional fees generated from interpretation of out-of-office tests by

a particular physician into the "Net Profit" from "Ancillary Services" calculation.  In fact, including professional fees for interpretation of "out-of-office testing" into the "Net Profit" for "Ancillary Services" calculation would not result in an accurate net profit calculation for "Ancillary Services," as the profit margin would be artificially inflated by revenues for professional fees that did not derive from "services provided to patients in Employer's office," as "Ancillary Services" is defined.  Therefore, the undersigned finds the interpretation advanced by Dr. Zayed that professional fees generated by him for reading and interpreting all tests administered outside of the offices of defendants, whether the test is administered in a hospital or other facility or another physician's office, are not "professional fees included under ancillary services" is reflective of the true intent of the parties.  Such professional fees are properly included as "professional fees" in the "Net Collections" calculation.

However, it makes no economic sense to categorize a professional fee as included or excluded under ancillary services based on the location of the reading and interpretation of the test rather than the location of administering the test.  The critical factor in determining the characterization of a professional fee as included or excluded under ancillary services is who assumed the costs and risks of administering the test - not where the test was read.  If the expenses of the test were incurred by defendants at their office, it does not matter where the test results were interpreted – all are pooled into the "Net Profit" for "Ancillary Services" calculation.  If Dr. Zayed's professional fees from

reading in-office test results were personally credited to him as "professional fees" in the "Net Collections" calculation if he read them in a coffee shop, but included in the ancillary services pool if he read them in the office, he would have no incentive to spend much, if any, time in the office which would be an absurd result in conflict with the aims of developing a practice as reflected in the "Net Collections" bonus structure. Therefore, the undersigned finds the interpretation by Dr. Dibbs that "professional fees included under ancillary services" includes all professional fees generated by Dr. Zayed for reading and interpreting the results of tests (except EKG's) administered in the offices of defendants, no matter where the reading and interpretation took place, reflects the true intent of the parties.

*Conclusion*

For the reasons given above, plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. Proc. 56 (Rec. Doc. 47) and defendants' Memorandum of Law Regarding Professional Contract (Rec. Doc. 46) are **DENIED.**

**IT IS THE FINDING OF THE COURT** that the following contract terms were intended by the parties to mean the following:

1. The term "professional fees" in "Net Collections" means all professional fees generated from all sources rendered by Dr. Zayed, except for "professional fees included under ancillary services." The term "professional fees" in "Net Collections" includes, in addition to fees for face-to face consultations and surgical procedures regardless of where

they are performed, professional fees generated by Dr. Zayed for reading and interpreting all tests administered outside of the offices of the Cardiology Center of Acadiana, such as in hospitals or by other physicians in that physician's offices or at other facilities, no matter where the reading and interpretation of those tests by Dr. Zayed took place.

2. The term "professional fees included under ancillary services" includes all professional fees generated by Dr. Zayed for reading and interpreting all tests (except EKG's which remain as "professional fees" included in "Net Collections") administered in the offices of the Cardiology Center of Acadiana, no matter where the reading and interpretation by Dr. Zayed took place.

**IT IS FURTHER ORDERED** that whether a particular cost or expense is included in the definition of "cost of goods and operating expenses" shall be determined by the application of Generally Accepted Accounting Principles (GAAP).

Lafayette, Louisiana, this 20th day of December, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)